Your Honor, in this particular case, the statement, and I accept that this time, I entered illegally, I accept that, I accept that that's the truth. That statement was made in open court in a hearing wherein the defendant, the appellant himself, had filed a motion for a changeover, new attorney, motion for a change of counsel. This was the second hearing. The first one was filed by the attorney himself. This was the second hearing. Now, in this second hearing, the magistrate judge comes on the bench and immediately starts asking questions of the defendant in this particular case. The attorney for the defendant stands mute, says nothing, does nothing. And in open court, obviously, the government is also present, and the statement is made, and I believe it was a response to the actual questions being asked by the judge of the defendant himself. Now, in Tucson, Your Honor, in our district, we have, as this Court is well aware, we are overburdened with these 1326 cases. And there is always a, not always, but I've been part, I've been doing these cases since the mid-'80s, and what has happened is that many times the defendants don't like the messenger, which is the attorney appointed to represent them, and to a certain extent, there's always some sort of conflict. It's usually resolved when you have a, either a motion to withdraw or what we call a settlement conference in Tucson where you can apprise the defendant of the ramifications of not accepting a plea versus going to trial, that sort of thing. In this particular case, however, Your Honor, when the actual hearing was held, it should have dawned on the attorney at that time that it should not have been in open court. The government can participate in such a motion, but only to the extent how it's going to affect the government's position vis-à-vis their trial schedule, it has been set for trial. Maybe there were witnesses, fingerprint experts coming from D.C. or wherever they're coming from that they've already scheduled that say it's real close to the trial time, then I believe the government should have an input, wait a minute, we can't have a change of counsel here because of these logistics, but that being said, Your Honors, then the court on its own should have said, okay, let's have a hearing, closed hearing or ex parte hearing to determine the factual conflict between the defendant and his counsel to determine. And, Your Honor, the Mendez-Sanchez and Lindsay cases out of this Court lay out a perfect scenario of how it should be done. In those cases, and in fact the Mendez-Sanchez case was cited by the government, to the extent of the painstaking colloquy that the judge has with the defendant regarding the pitfalls of either representing himself or not accepting a plea or going forward, that's what should have been done in this case. In fact, I think a better rule for this Court to do is the very scenario I just laid out. If that happens when a motion to withdraw is filed, then it should be government. You have a problem if a new counsel comes in that will change the dates. If the government then says that, then that's a separate issue as a part between counsel and his attorney. And specifically, from the record it is clear the judge was talking directly to the defendant. He even tells him, don't shake your head no at me, or don't shake your head no. You're not accepting the fact, and that's when he makes the statement. Right, well, I accept what you say, and I think you have a good point. The difficulty I have in this case is that, of course, there's no objection by defense counsel. You've alluded to the fact that defense counsel probably should have taken some action. And so why isn't this an ineffective assistance of counsel issue to be raised on 2255? Because, Your Honor, I think the issue is so clear. There's one of those few rare cases that this Court can determine that the attorney being there, he should have just even do an objection motion to strike, you know, something from the record of any statements made by the defendant. Absolutely nothing was done. I understand what the Court is saying, and that is true. And I, when I was writing the brief, I wasn't the trial attorney. No, I understand. As a record, I'm looking at everything. I can't believe what's happening as I'm reading it, and I'm trying to figure it out. And I know that he can later file a 2255 to address that particular IAC claim. But I think in this particular case, there can be no reason why the attorney there would not have done that. I can tell you that I have done many of these similar type motions, Your Honor, and once I tell the Court what's going on, I always ask for a closed hearing. But I think, as I say, that the procedure should be that very thing. Now, the government has cited and submitted the 28, Rule 28J letter about the subsequent authority of State v. Smith, although it cites that it's a 2010 case, it's really a 2002 case. But in that particular case, the input by, in the other case that it cites, the government was able to be included because they wanted to let the court know that they had other logistical problems with the case. I do not believe, nor should the judge be involved, I mean, the government should be involved with telling the court whether or not a certain defense counsel should remain on the case. But that being said, Your Honor, it is clear this should not have happened. Not only that, but then this very statement is what is used by the government in its opening statement before anything is said is told to the jury. In its closing argument, it plays the audio tape of this. So it becomes a cumulative effect that ends up really undermining whether or not  I guess, related, just related to what Judge Thomas has asked, what is the, apart from the fact that the, that counsel might have said something, what is the, what is the, the actual error that, that we're talking about? By the omission of the statement? Yeah. What is the violation, the evidentiary violation? He was, he said it. Well, yes, he did say it. The issue was it never would have come in the, or would have seen the light of day had it been an ex parte hearing. It would not have been able to be used by the government. Maybe I'm misunderstanding the position, Judge. No. The, the, at the time when he made the statement, it should have been an ex parte hearing, is that what you? Yes. That the courtroom should have been cleared, is that what you're asking? Yes, Your Honor. And if, and I'm trying to understand, and so it would have become part of a calculus as to whether he was accepting responsibility and should be allowed to plead, is that? No, because, Judge, in looking at the totality of the record of the way the magistrate judge was asking the questions, it was that, basically the judge was scolding him from the bench, telling him, you're not accepting responsibility for your actions. And he's, from the record it says, defendant shaking his head. It's like, no, no. And then, and then he says, no, you're not. You're not accepting. That's when he blurted it, or said the words that he said. But it was in direct response to the questioning by the judge. That's how it came out. Well, I also take your point that it seems like the judge was trying to get him to accept a plea, and therefore, arguably, it was a settlement conference. But it wasn't denominated a settlement conference. No, it wasn't. I agree. I agree. But I think in the way and in the manner that the magistrate judge did it, it basically converted it to a settlement conference. In settlement conferences, that's what we do. We have a, I don't know if the animal is only for Tucson, but we have a per preliminary guideline report that we can ask probation to do. And it basically, they look into the criminal history, where the defendant lies in his offense level, be it criminal history category and offense level. And then they always subtract two or three levels depending. And then from there, it's the additional levels that the government will offer. But anyway, that gives you a pretty good blueprint of where you are at, particularly in our cases, because we have a lot of, I hate to say it, but the defendants who use different names at times. So we don't always know exactly what the criminal history is. And it's always important to know that, because obviously it affects it, as did in this case. Is that, is the theory that this was converted into a settlement conference and that therefore it should, the other side shouldn't have been there? Or is that? No, in a settlement conference by rule in Tucson, when we have it, it is that, a settlement conference that the judge and the prosecutor and defense and the defendant are there and they discuss what the parameters are of the plea, what's being offered. And the judge goes through that, including telling the defendant the pitfalls of going forward as opposed to the plea that's being offered, that sort of thing. It's similar in the state of Arizona. They have what's called a Donald hearing, that by a Supreme Court decision said that a defendant should be apprised of a plea agreement that is being offered and what the differences are. Not too unlike the recent, two recent U.S. Supreme Court cases, and now a defendant's counsel must have something that the defendant has been apprised of, of the current plea. Who was the judge who was presiding at this time? There was a whole series of judges in this case. The magistrate judge was Hector Estrada. Estrada, Judge Estrada. The presiding judge was the late Judge John Rowe. For the trial, and then sentencing conducted. Yes. And that became part of the record, well, not only because of the trial, but I think a week or two weeks before trial is when the government filed this motion of nominee to allow that particular statement to come in. And that's what it was. Well, let's assume that we, for the sake of argument, that all the statements are out. The rooftop statement's out. The statement made in open court's out. Why is there still sufficient evidence to convict your client? You have testimony that he had, he was in the United States and that he'd previously been removed. Isn't that the end of it? I, I, well, I mean, they can present that evidence. Whether or not the jury finds that, I mean, Judge, I can't answer for the jury about what they would do it, but. No. But to find on the harmless error analysis, I understand what the court is getting to, but I think the fact of the matter that the statement was made or was allowed in, it becomes whether or not at the end of the case, one can determine that whether or not that there was a substantial and injurious effect of those statements upon the jury. And is it a harmless effect? I don't think so. I think the jury then would have a tough determination or a difficult determination to make whether sufficient evidence was presented to convict. Right. But would you have his testimony that he'd been removed before and an identification by the officer that he was in the United States and no defense to that? So what's, why don't you think that's enough? Because, Judge, it, it, it's like, I, I, I've had not guilty verdicts in cases where I've prepared my client to go to jail. Yeah. I just cannot explain. We're talking about rational juries here. Well, my jurors have always been very smart when they were acquitted by client. I can say about the others. The other, the other, uh, you've got just about, um, two and a half minutes left. Do you want to reserve? We're not forgetting your other issue. You'll have a chance to. I didn't reserve any? I thought I did. Yeah, but you, but it's, it's. Yeah, but this is your thing. One of the main dissenting issues that I have is that there is a conviction that is described to that DUI, aggravated DUI conviction. The problem, uh, and it was objected to by, by, uh, trial counsel at that time for sentencing, and the, the problem is that there were absolutely no documents. Even the probation officer put in the report, there are no documents, even from the supposed jurisdiction that that conviction came from, they could find no documents. It is, however, in a 1999, uh, report that the defendant had. Now, there's nothing, however, in the record as to the, that 1999 PSR, whether or not that was challenged or whether even a challenge would even be necessary in that case. It's my understanding from the record is that that 1999 case he received, I think it was 130 months, whether or not it was stipulated or not, I don't know. All I know is he got 130 months and somehow that became part of the record. And even though it was objected to, uh, the judge allowed it in by saying that he took judicial notice that the probation officer called the parole board and because the parole board said that that was part of revocation, that it became valid. Now, the three points are important because it raises it to a different criminal history category, which gives an additional month. Along with that is the fact that the sentencing judge, and because it had been Judge Rowe's case, a visiting judge came to do the sentencing. And that judge found and accepted probation's recommendation that because the defendant had put the government in its proof by going to trial, that he was not going to give him the acceptance of responsibility, even though we have the statements which were challenged for evidentiary purposes, not that he had not made them, that there were simply evidentiary purpose type arguments for those, but nonetheless, he decided not to. In fact, the defense, the counsel for the defendant at that time had requested, according to his calculations, that an 80-month sentence would have been at the low end of the guidelines. And then I think that's what probation had also recommended, had the Court accepted those particular objections. So all of those cumulative errors, Your Honor, a 100-month sentence, and I'm not even challenging here the 21-month consecutive supervised release sentence, because by the time I got it, all the appeal papers, I think it went through another attorney, but anyway, the time limit had passed, and this is where I got it. Anyway, Your Honor, you know, given all those factors, I think minimally, there's I believe this Court should remand for a resentencing, given that it generally is not a way of punishing a person for taking a case to trial. The law is clear in that area. The government tries to put it in a different way. And your time has expired, so thank you very much. Bruce Ferg, Assistant United States Attorney, on behalf of the government in this case. Since the second issue of the defendant's in-court admission seems to be the primary focus so far, I'll address that. First of all, I think it's important to note that the district court specifically found that what the defendant said was not responsive to the magistrate's questions, that it was, in fact, a spontaneous statement. Well, in terms of its probative value for sentencing, though, doesn't that make it even more an acceptance of responsibility than an answer to a question? Well, there was never any objection raised concerning its use in sentencing, but as far as crime. I'm not saying there's an objection to its use. There's an objection to its nonuse. In other words, to say, I accept that I did this crime, I agree that I did it. Why isn't that an acceptance of responsibility that would permit a two-point reduction? I'm sorry. I misunderstood your question. The problem with the acceptance of responsibility argument is twofold. First of all, the requirement of the guideline is, and the case law, is that there be acceptance of responsibility for all of the elements, and although he admitted, yes, I'm in the country illegally, one of the elements of a 1326 is alienage, that, in fact, he was a citizen of Mexico, and he did not admit to that except in the course of the statement on the rooftop, which he did. He says, I accept that this last time I entered illegally. I accept that. I accept that that's the truth. So I don't understand why illegally doesn't cover that he had no right to be here. Well, illegally and right to be here, or lack of right to be here, are the same, but there is a separate element specifically required in proof of 1326 of alienage. In other words, where is the... So you're saying as a matter of law, the district court could not have considered that an acceptance of responsibility because he didn't say, and I didn't have permission, and I'm not a citizen of the United States? I believe that's correct. But also... Well, I mean, the difficulty with the acceptance of responsibility is, apparently, what the sentencing judge did was to punish him for going to trial, which is not permitted. And here's a guy who says, in response to a little bit of, I think what the magistrate judge did was excessive in trying to push him at a hearing where everybody was there. And he said, you have to accept this. You have to accept this. And he says, well, I accept that I was here illegally. But if you're looking at the two points, he says he was here illegally. He seems to have been punished just for going to trial on it. Well, respectfully, I don't think that's what the record says. If you actually take a look at, and I'm not implying that you haven't, but going back to the record of the sentencing hearing, the government counsel at that point argued the defendant is not entitled to this acceptance because he has not unambiguously and unequivocally, which is what the case law says, accepted all of these elements, including alienage. And the district court at that point said, yes, I agree with the government's argument. He did not say that because you're going to trial or have gone to trial, I'm going to punish you. Basically, he said, you didn't admit it in the PSR. In fact, you refused to talk about the crime to the probation officer. So he had the opportunity, even after the trial, to, in fact, clearly admit all of these elements, but he didn't do it. Well, if you take all, assuming that the statements aren't suppressed, he admits it to it on the rooftop, he admits to it in open court, and then he goes to trial, it seems to me the conclusion is he's punished for going to trial. Well, that's, I mean, what the government argued and what the court said are two different things, because even though the government didn't make this argument, what the court actually said was that they weren't going to do this because the government was put to the burden of proof. And that that was the judge's reason, and that's, I guess, why I'm asking these questions, because if that is the judge's only reason, regardless of what the government had argued, if that was the judge's only reason and that was erroneous, why wouldn't we have to send it back for reconsideration of that issue? My reading of the record, and perhaps you can direct me to someplace where it's saying that, but in excerpts of record of the defendant, volume 1, where the transcript of the sentencing is at page 9, Mr. Tim, who is the government counsel, says, middle paragraph, so the evidence that goes to the element of alienage that the government has, the defendant denied when he testified that, in fact, he hadn't said that, and then continued to deny all the way through the trial. And so it's the government's position that when you deny an element of the offense, you're not accepting responsibility. And at the bottom of the page, the court says, I find the government's position to be sound. I'm going to deny this objection. So I don't know where the counsel's suggestion is. Well, where is it in the transcript that the defendant denied his alienage? He didn't testify. That occurred when he testified at the suppression hearing. The agent Lampson talked about what had happened on the rooftop, including that he had directed these questions to all of the people that were up there, specifically including the defendant, and that they had all admitted, yes, we're from Mexico, no, we don't have any papers, we're here illegally. But when the defendant testified, he got up and absolutely denied that he had said anything like that. And so there is that denial. There is no testimony at trial. I'm not sure why that counts as denial of alienage. Is there any place where he said, I'm actually a citizen of the United States? As distinct from saying the government has the burden to demonstrate alienage. No, he never made that assertion. Okay, so why is it accurate for the government to have argued and the court to have apparently accepted the argument that he has denied alienage? The burden under the guideline is on the defendant to prove that he is in fact accepting responsibility, which includes. That's not my question. That's not my question. You made the affirmative statement here and the affirmative statement in the record. He has denied that he's an alien. And I just don't see where that has happened as distinct from not saying something or to say, I'm not going to talk about it is different than a denial. Is there a place here where it's denied? During the suppression hearing, he expressly denied having told the agent that he was from Mexico. He denied making the statement. Is that a denial? I guess that seems different to me. Maybe not to you, but it does to me. Well, it seemed effectively to be saying it certainly does not constitute an admission that he is from Mexico. A non-admission is not the same as a denial, though, is it? Under the circumstances, it seemed to me that it was, but I don't want to get into specifics. Let me change topics, if you will, on one we haven't discussed, which is the rooftop statement. Yes, sir. I find this very curious because here you have all these folks that are hiding on a rooftop that's not accessible except by climbing up over walls. They're lying down. The agent comes in. He says, you're surrounded. Stay where you are. And to your point, he doesn't draw his gun, but he tells them they're surrounded. Excuse me, Your Honor. That's not true. What's not true? The defendant claimed that he said that they were surrounded and then retracted that. But Agent Lamson specifically said, no, I didn't. I'll take your point then. I mean, all right. So he says he calls for backup anyway at some point. So they're all down on the rooftop. But there really is no way for them to escape this rooftop. The agent testifies about what pains they take to escort them down safely. So to me, there's a difference between a Terry stop and an open field and one that's on the rooftop where there's really no means of escape. And then the officer writes down, I was able to get them into custody. Now, he explains that the hearing letter, he really didn't mean that, or at least he says, I wasn't using that in the legal form. But he says, at least at some point, whether it's Friday or not, he says they're in custody. I was able to round them up, and they're lying there. They really can't escape from the rooftop. Why aren't they confined in custody for the purpose of this? Well, Galindo Gallegos, which is kind of the lead case, made the point, going back to the point of Miranda and Terry, that the concern is the isolation from any other observers that would permit malignant police to basically beat you or do whatever. But when you are out in the open, not only merely physically in the open, but when it's public because there are numerous other witnesses, that is a sufficient restraining influence that it's considered to be in the public, much like a Terry situation. And they specifically distinguished what was happening in Galindo from an earlier Ninth Circuit case where, yes, there was a way out in the boondocks, but the agents had specifically isolated the one person that they wanted to talk to from his companion. And so in that situation, he was physically out in the open, but he was isolated. Here, he was not isolated. He had six or seven other witnesses to act as a restraining influence. Well, that's true. He was really not free to go, though. I mean, I guess I'm thinking about United States v. Craighead, which is nobody inside. But it's a reverse situation. The guy is in his own home, and they say, well, he had no place to go, therefore, it's custodial. I mean, you said, yeah, you can – he was blocking the door, and he said, well, I didn't have any place to go. And I don't see that these folks had any place to go. Well, that's not all that there is to the test. All of your courts, you, the Supreme Court, made clear it's a totality of the circumstances. Craighead was a unique situation because they – the place was swarming with officers. They had unholstered weapons, clearly indicating an intention to use force, if necessary, or suggesting that. He was physically isolated again in this little room with a large person standing in front of the door, so they didn't have any choice about it. But they argued in that case, because I heard it, you know. I mean, they said, oh, he was free to go. He could have walked out of there. What was Rob – you know, they said, yeah, there's no problem with that, same argument, except there was no place to go here. I think the bottom line, Your Honor, is that Craighead was a fairly unique situation. But we have at least three published opinions from this Court which are very similar, Galindo, Cervantes-Flores, Medina-Villa, on which Judge Graber sat. And they made the point that when you're talking about these kinds of immigration stops, Terry's situation, there is a certain amount of detention which is permissible. I mean, we're talking about a stop. Yes, there is a certain amount of detention and the force to affect that which is appropriate. In each of those cases – I take your point. Now, you're running out of time, and I don't mean to stop you, but I want to turn to the hearing that – in which the statements were made by the defendant. I found that hearing pretty odd. I mean, the colloquy from the Court really does resemble something you would say at a settlement conference. You're not accepting responsibility. You're not – you're not – I don't think you get it. It's an odd circumstance. If it's truly a change of counsel, the judge probably should have closed down the Court. If it's a settlement conference, other rules should apply. What's your response to all that? Well, the bottom line is that it was neither. First of all, as far as the closing down of the court or an ex parte hearing, Judge Rohl said that's not the way we typically do it down here. Obviously, he's the chief judge. He knows. He said, if you want an ex parte hearing, then you ask for it. Now, was there a reason for the defense counsel to ask for it in this case? We had already been through one prior change of counsel hearing where he didn't blurt out anything going to his factual guilt, so there was no reason to anticipate that he would go off in that direction in this case, nor was it in – there was no mandatory rule. Even Mr. Lopez says, well, this ought to be the rule, but it isn't. It's the district court's discretion, or in this case the magistrate, as to how they And that's essentially what Judge Estrada was doing. He was trying to find out what exactly still is the conflict here. How deep is it? Is it, in fact, kind of irreconcilable differences so that it's necessary to change counsel? And the reason he didn't go off in that direction in this case, nor was it in this case the district court's discretion, or in this case the magistrate, as to how they Essentially, yes. It was a fairly common situation where the defendant looked at what his potential sentence actually was and said, that's too much time. That's not fair. And simply was not accepting counsel's explanation that, you know, with your history, this is where you're at. And so it was an appropriate inquiry to try and get to the bottom of this. And it was an appropriate inquiry to try and get to the bottom of whether there really was the kind of conflict that required a change of counsel. As far as the settlement conference, again, Mr. Lopez acknowledged it's governed by rule. You have to ask for it. And just having a PUR simply helps to inform both sides of what the stakes are, but  It is a very long colloquy by the judge. He says, you aren't to listen to things I heard. Whatever it is that I said to you didn't sink in. You aren't to be treated, people that go in the courthouse and another courthouse and they're charged with a misdemeanor offense of illegal entry, not illegal reentry. You're not in the same situation they are, sir. They have prior convictions. It's not just, you know, you're not just being here illegally. And then it goes on and on. If you persist in going down this track, they'll ultimately withdraw the plea agreement and you're looking at considerably more time than 63 to 78 months. Don't you get it? Don't you understand? I mean, this doesn't seem to be a normal change of counsel hearing. I mean, it just, it is, you know, it does sort of resemble a settlement conference, which would be kind of. But even if that were so, what is the rule of admissibility which we're actually looking at? Rule 410 says you've got to be negotiating with the government. The government had said we're not going to change anything. This is. But wasn't the court concerned that they're just going to be down this road getting a new lawyer and a new lawyer and a new lawyer because you're not understanding what the reality is? I think that was a reasonable understanding because, again, this is not an atypical situation. And if you'd already gone through it once before in detail, here it is again. What's to be gained, I can picture the magistrate thinking, by giving him another lawyer who's going to tell him the same thing and he's still going to come down to the same point. Okay. Okay. Our questions have taken you over your time. Is there anything more that you want to ask? Nothing. Thank you. Thank you, Your Honor. And we'll give you one minute for rebuttals, Counselor. I've always been told by when I was learning to be an attorney is that there's got to be a point when you need to know when to stop asking questions or go forward to that end. And I really don't have that much more to add unless the Court has specific questions about any of the issues. I know about the rooftop issue regarding those statements, and, you know, I briefed it as best that I could. But it's not other than the other facts that the Court has alluded to. Any further questions from the Court? No. All right. Thank you very much for your argument. Thank you, Counsel. It's an interesting case, as they all have been. And we will take a ten-minute break before proceeding with the next argument. Hello, guys.
judges: Schroeder, Thomas, Graber